1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JOSE ARTEMIO CARMONA-PEREZ,    ) No. 6:20-cv-00186-AA
                               )
Plaintiff,                     )
                               )
    vs.                        )
                               )
CITY OF SALEM; MICHAEL BASKETT; )
DANIEL CHASE; and THOMAS AMMON,)
                               )
Defendants.                    )
-------------------------------

VIDEOTAPED DEPOSITION OF MICHAEL BASKETT

Taken on behalf of the Plaintiff

April 13, 2022

     BE IT REMEMBERED THAT, pursuant to the Federal Rules of Civil Procedure, the Videotaped Deposition of MICHAEL BASKETT was taken before Julie Purcell, a Certified Shorthand Reporter, on Wednesday, April 13, 2022, commencing at the hour of 1:09 p.m. on the Zoom platform.

2

```
 1  APPEARANCES:

 2  OREGON JUSTICE RESOURCE CENTER
    Juan C. Chavez and Jonathan Gersten
 3  PO Box 5248
    Portland, OR 97208
 4  503.944.2270
    jchavez@ojrc.info
 5  jgersten@ojrc.info
        Attorney for Plaintiff
 6
    ALBIES & STARK, LLC LLP
 7  Maya Rinta
    1 SW Columbia Street, Suite 1850
 8  Portland, OR  97204
    503.308.4770
 9  maya@albiesstark.com
        Attorney for Plaintiff
10
    SALEM CITY ATTORNEY'S OFFICE
11  Jennifer M. Gaddis
    555 Liberty Street SE, Room 225
12  Salem, OR  97301
    503.588.6003
13  jgaddis@cityofsalem.net
        Attorney for Defendants
14
    Videographer:  David Pearce, CLVS
15

16

17

18

19

20

21

22

23

24

25
```

                                                                    26

1        Q.   Was this incident the first you had heard of
2   Mr. Carmona-Perez?
3        A.   I believe so, yes.  I don't recall hearing
4   about him ever before this.
5        Q.   Okay.  Now, how did you hear about Mr.
6   Carmona-Perez the day of?
7        A.   Well, it was the day prior.  Another Sergeant
8   advised me that he had been indicted on a domestic
9   crime, including Attempted Assault 1, and he wanted us
10  to go try to find him and take him into custody because
11  he also had a warrant for his arrest.
12       Q.   What do you do then after you receive that
13  direction from another Officer they would like you to
14  find and arrest this person who has a warrant?
15       A.   In this particular instance or in general?
16       Q.   Let's go with this particular incident.
17       A.   We never had opportunity to go find him or
18  attempt to find him that -- the night of the 27th,
19  because we were just too busy with other calls for
20  service.
21       Q.   Okay.  How did you find him the next day?
22       A.   The same Sergeant that told me about him told
23  me that he had information that Mr. Carmona-Perez was at
24  a bar playing video poker, wearing a green University of
25  Oregon sweatshirt.

1  planning of it, we had information he was at a video
2  poker machine, so we -- I couldn't tell you exactly what
3  we said as far as the planning, but we walked in and he
4  was seated at a video poker machine, dressed as
5  described.  And -- and so we just -- to minimize his
6  ability to do anything -- there's three of us -- one
7  went to the left arm, one went to the right arm, and
8  then I walked up behind him.  And so -- but I guess the
9  short answer for the planning is you can't plan for
10 every single contingency of where he might be, i.e. he's
11 walking out while we're walking in, he's, you know,
12 walking to the bathroom as we're walking in, we meet
13 face to face in the middle of a room.  You can't plan
14 for every single contingency on something like this.
15      Q.   Okay.  Just -- just so I'm aware, is there
16 a -- any kind of particular planning document that you
17 get to fill out prior to an incident like this, or can
18 you walk into the bar in the manner that you just
19 explained right now?
20      A.   There is no planning document, no.
21      Q.   Okay.  So, the information that you had -- or
22 let me back up.  My understanding is the information
23 that you had received the night prior was that Mr.
24 Carmona-Perez had a warrant for domestic violence
25 related issues, and how was that communicated to you

1  again?
2       A.   Well, it wasn't -- he was indicted, a fresh
3  indictment.
4       Q.   A fresh indictment.
5       A.   I don't recall that the warrant was actually
6  entered into the system yet.  That's what would proceed
7  an indictment warrant.  He was indicted, but he had a
8  burglary warrant for his arrest, which I called and
9  confirmed, and it also had cautions on it, and that
10 information was provided to me by Sergeant Brandon
11 Ditto.
12      Q.   And what were those cautions?
13      A.   My recollection is it's past Assault 2 and
14 past unlawful use of a weapon.
15      Q.   Did it detail what kind of weapon?
16      A.   No.
17      Q.   Okay.  Now, how was this information relayed
18 to Officers Chase and Ammon?
19           MS. GADDIS:  Object to the form as it
20 calls for speculation, but go ahead and answer if you
21 can.
22      A.   I don't know when they were first -- I cannot
23 recall when they were first made aware of it.  It might
24 have been when I had conversation with them.  They have
25 their own computers and access that they can pull up the

Case 6:20-cv-00186-IM   Document 83-1   Filed 10/20/22   Page 6 of 8
CARMONA-PEREZ v. CITY OF SALEM, et al.                     6:20-cv-00186-AA
MICHAEL BASKETT                                            4/13/2022

84

1  Bates stamped COS 1423 through to 1425.
2          So I'm just going to move to the second page
3  of Exhibit 9 and I have highlighted some text.  And do
4  you recognize this email?
5          A.  Yes.
6          Q.  Okay.  And did you send this email?
7          A.  Yes.
8          Q.  Okay.  Do you -- Have you had a chance to read
9  the highlighted text?
10         A.  Yes.
11         Q.  Okay, very good.  So I'm going to -- So I'll
12 just ask first, "One guy" -- and I'll quote some of the
13 text.  "One guy, and I think he left before I identified
14 him, made a comment regarding Perez not speaking
15 English."
16         This person, did you see them in the -- any of
17 the videos that we reviewed today?
18         A.  I don't recall if he's the one that left the
19 machines or not.  I -- He could stand in front of me
20 right now and I wouldn't know what he looked like.
21         Q.  Mm-hm.  Okay.  And why did you choose not to
22 engage in any kind of debate with him?
23         A.  Well, it was clear from his demeanor that -- I
24 mean, I'm not going to get into a debate with him on --
25 If he didn't know the person individually,

85

1   Carmona-Perez, I'm not going to talk to him about
2   whether or not Carmona-Perez even knows English, because
3   if he doesn't know Carmona-Perez or hasn't heard him
4   speak, then there's no point in even talking to him
5   about it.  His demeanor -- I could tell from his
6   demeanor that he seemed to think that we had done
7   something wrong, and that's not the time or place for me
8   to -- to debate that with him because we had the other
9   things going on.  And I'm not going to debate -- like
10  I'll just reiterate, if he doesn't know Carmona-Perez,
11  he doesn't know if the person speaks English or not and
12  I'm not going to get into a debate with that because he
13  said, "Well, it's obvious."  Well, I'm not going to get
14  -- we're not going to get into the weeds on that, in
15  that instance.  If he felt we had done something wrong,
16  he had the option of filing a Complaint himself if he
17  felt it was that serious.
18       Q.   Okay.  Did he say he thought something was
19  wrong?
20       A.   No.  It's just his -- his overall -- how he
21  reacted to me when I was talking to him.  I got that
22  impression.  I mean, I don't like using the phrase "I've
23  done this job a long time," but in this case I've done
24  this job a long time and the way he was responding to me
25  gave me that distinct opinion.

```
 1                      CERTIFICATE
 2
 3
 4         I, Julie Purcell, a Registered Professional
 5   Reporter and Certified Shorthand Reporter, hereby
 6   certify that said witness personally appeared remotely
 7   via Zoom before me at the time and place set forth in
 8   the caption hereof; that at said time and place I
 9   reported in stenotype all testimony adduced and other
10   oral proceedings had in the foregoing matter; that
11   thereafter my notes were transcribed through
12   computer-aided transcription by me; and that the
13   foregoing pages constitute a full, true and accurate
14   record of all such testimony adduced and oral
15   proceedings had, and of the whole thereof.
16         Witness my hand this 15th day of April, 2022.
17
18
19
20                          [signature: Julie Purcell]
21                          Julie Purcell
                            CSR No. 21-0011
22                          Expires:  6/30/2024
23
24
25
```