IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOSE ARTEMIO CARMONA-PEREZ**, | Case No. 6:20-cv-00186-IM |
| Plaintiff, | **OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **CITY OF SALEM, et al.**, | |
| Defendants. | |

Juan C. Chavez, PO Box 5248, Portland, OR 97208. Maya Rinta, Albies & Stark LLC, 1 SW Columbia St. #1850, Portland, OR 97204. Attorneys for Plaintiff.

Sebastian Tapia and Daniel B. Atchison, City of Salem, Legal Department, 555 Liberty Street SE, Salem, OR 97301. Jennifer M. Gaddis, Garrett Hemann Robertson P.C., PO Box 749, Salem, OR 97308. Attorneys for Defendants.

**IMMERGUT, District Judge.**

This action arises from an encounter between Jose Artemio Carmona-Perez and police officers on February 28, 2018, in Salem, Oregon. Plaintiff Carmona-Perez ("Plaintiff") filed suit against Defendants City of Salem, Sergeant Michael Baskett, Officer Daniel Chase, and Officer Thomas Ammon (collectively, "Defendants"). Compl., ECF 2; First Am. Compl. ("FAC"), ECF 46. Plaintiff brings the following claims: (1) a Fourth Amendment claim under 42 U.S.C. § 1983

against Sergeant Baskett and Officers Chase and Ammon; (2) a *Monell* claim under § 1983

against the City; (3) a state-law negligence claim against the City; and (4) a state-law battery

claim against the City. This matter comes before the Court on Defendants' Motion for Summary

Judgment as to all claims. Defs.' Mot. for Summ. J. ("MSJ"), ECF 63. This Court held a hearing

on Defendants' motion on September 18, 2023. Mins. of Proceedings, ECF 98.

After considering the record, written briefs, and arguments of counsel, this Court

GRANTS in part and DENIES in part Defendants' motion for summary judgment. The Court

grants the motion as to the *Monell* claim and the state-law negligence claim. The Court denies

the motion as to the state-law battery claim. As to the Fourth Amendment claim, the Court

concludes that the take-down was a reasonable use of force as a matter of law, but even assuming

it was an unreasonable exercise of force, the officers are entitled to qualified immunity for this

conduct. Therefore, this Court grants Defendants' motion as to the take-down. However, there

are issues of material fact as to whether a constitutional violation occurred regarding the use of

"palm strikes" once Plaintiff was on the ground, and whether Defendants Chase and Baskett are

entitled to qualified immunity for this conduct. Accordingly, this Court denies Defendants'

motion as the the palm strikes with respect to Officer Chase and Sergeant Baskett.

## BACKGROUND

On February 27, 2018, Sergeant Baskett learned from another officer that Carmona-Perez

"had a confirmed felony warrant for his arrest and had recently been indicted on several

domestic violence charges, including Assault I (Class A Felony) for attempting to run over the

victim with a motor vehicle." Baskett Decl., ECF 64 ¶ 2; Gaddis Decl., Ex. C, ECF 83-1 at 26:7–

11 ("Another Sergeant advised me that [Carmona-Perez] had been indicted on a domestic crime,

including Attempted Assault 1, and he wanted us to go try to find [Carmona-Perez] and take him

into custody because he also had a warrant for his arrest."). Sergeant Baskett also learned that Carmona-Perez had a warrant for his arrest that was issued in 2016. Baskett Decl., ECF 64 ¶ 2.

While the February 2018 indictment does not appear in the record, the 2016 warrant does. That warrant includes the following offenses: assault in the fourth degree constituting domestic violence in violation of O.R.S. 163.160 (Class A misdemeanor); burglary in the first degree in violation of O.R.S. 164.225 (Class A felony); assault in the fourth degree constituting domestic violence in violation of O.R.S. 163.160 (Class C felony); burglary in the first degree in violation of O.R.S. 164.225 (Class A felony); strangulation constituting domestic violence in violation of O.R.S. 163.187 (Class C felony); unlawful use of a weapon in violation of O.R.S. 166.220 (class C felony); and burglary in the first degree in violation of O.R.S. 164.225 (Class A felony). Gaddis Decl., Ex. G, ECF 83-5.

The following day, February 28, Sergeant Baskett was informed that Carmona-Perez was at a local bar, and Sergeant Baskett took Officers Chase and Ammon with him to arrest Carmona-Perez. Baskett Decl., ECF 64 ¶¶ 3–4; Chase Decl., ECF 65 ¶ 2; Ammon Decl., ECF 66 ¶ 2. Before performing the arrest, the officers performed a Law Enforcement Data Systems ("LEDS") review of Carmona-Perez, and they learned that his record "listed 'cautions' for Assault II (Class B Felony) and Unlawful Use of a Weapon (Class C Felony), as well as a past history of Resisting Arrest (Class A Misdemeanor)." Baskett Decl., ECF 64 ¶ 5; Chase Decl., ECF 65 ¶ 4; Ammon Decl., ECF 66 ¶ 4; *see also* Gaddis Decl., Ex. C, ECF 83-1 at 29:7–14.

When the officers arrived, Carmona-Perez was sitting on a chair at an electronic gambling machine. Baskett Decl., ECF 64 ¶ 8; Chase Decl., ECF 65 ¶ 7; Ammon Decl., ECF 66 ¶ 7; Carmona-Perez Decl., ECF 72 ¶ 4; Rinta Decl., Ex. 2 ("Surveillance Video"), ECF 73-2 at 00:00–00:10. The officers approached Carmona-Perez from behind and surrounded him on all

sides, with Officer Ammon grabbing his left arm and Officer Chase grabbing his right. Sergeant Baskett stood directly behind Carmona-Perez. The officers were all in uniform. Surveillance Video, ECF 73-2. Despite that all three officers were in uniform, Carmona-Perez claims that "[a]t the time, [he] did not realize they were law enforcement officers." Carmona-Perez Decl., ECF 72 ¶ 4; Gaddis Decl., Ex. D, ECF 83-2 at 43:9–14.

The parties agree, and the surveillance video reflects, that Officer Chase said something to Carmona-Perez at the beginning of the encounter, ECF 73-2 at 00:04–00:08, but the parties disagree about what was said. Defendants allege that Officer Chase "identified [him]self as a police officer and told [Carmona-Perez] that he was under arrest." Chase Decl., ECF 65 ¶ 8; Baskett Decl., ECF 64 ¶ 9; Rinta Decl., Ex. 3, ECF 73-3 at 50:21–23; Rinta Decl., Ex. 7, ECF 73-7 at 1 (Marion County Probable Cause Statement and Data Sheet completed by Officer Chase) ("I told Jose that he was under arrest for a warrant."). Plaintiff alleges that Defendants only asked him if he was "Jose." Carmona-Perez Decl., ECF 72 ¶ 6. According to Plaintiff, Defendants did not identify themselves as police officers nor inform him he was under arrest. *Id.* ("I don't remember Defendants saying anything to me in English or in Spanish prior to taking me to the ground: they did not tell me who they were, they did not explain what was going on, they did not say I was under arrest, and they did not give me any directions or commands.").

Next, the officers claim that, when they grabbed Carmona-Perez's arms, he "tense[d] up" and "attempt[ed] to pull away." Ammon Decl., ECF 66 ¶ 9; Baskett Decl., ECF 64 ¶ 10; Chase Decl., ECF 65 ¶ 9. Sergeant Baskett admits to "push[ing] [Carmona-Perez] forward toward the poker machine to try and prevent him from pulling away." Baskett Decl., ECF 64 ¶ 10.

The surveillance video shows Carmona-Perez's body shifting toward Officer Chase, ECF 73-2 at 00:07–00:09, and then shifting toward the gambling machine, *id.* at 00:09–00:11. It is unclear from the video whether Carmona-Perez tensed up or pulled away.

When Sergeant Baskett pushed Carmona-Perez forward, he "realized that the poker machine's glass screen could potentially shatter," Baskett Decl., ECF 64 ¶ 10, so he "directed the other officers to take [Carmona-Perez] to the floor in order to gain better control of him," *id.* ¶ 11. Sergeant Baskett and Officer Chase took Carmona-Perez to the ground. Ammon Decl., ECF 66¶ 10; Chase Decl., ECF 65 ¶ 10. The surveillance video shows Officer Ammon losing control of Carmona-Perez's left arm as they went to the ground, ECF 73-2 at 00:12–00:14, and Officer Chase claims that he lost control of Carmona-Perez's right arm, Chase Decl., ECF 65 ¶ 10. Once on the ground, Carmona-Perez was face down. Baskett Decl., ECF 64 ¶ 11; Chase Decl., ECF 65 ¶ 14; Ammon Decl., ECF 66 ¶ 10; Carmona-Perez Decl., ECF 72 ¶ 7.

As Defendants conceded at oral argument, the parties disagree about whether Carmona-Perez resisted once he was on the ground. Defendants allege that Carmona-Perez "kept his hands underneath his body, repeatedly kicked his legs and squirmed his body away from us." Baskett Decl., ECF 64 ¶ 13; Chase Decl., ECF 65 ¶ 12; Ammon Decl., ECF 66 ¶ 12. According to the officers, Carmona-Perez seemed to be reaching toward his waistband. Baskett Decl., ECF 64 ¶ 12; Chase Decl., ECF 65 ¶ 11; Ammon Decl., ECF 66 ¶11. Plaintiff alleges that "[t]hroughout this interaction, [he] was unarmed, [he] did not attempt to flee, [he] did not fight the officers or anyone else, and [he] did not use or reach for any weapon including in [his] waistband." Carmona-Perez Decl., ECF 72 ¶ 9.

Once on the ground, the parties moved out of the view of the bar's surveillance camera. Surveillance Video, ECF 73-2 at 00:14. At some point after the parties moved to the ground, a

witness to the encounter began filming. Rinta Decl., Ex. 1 ("Witness Video"), ECF 73-1. As corroborated by that video, the officers gave commands to stop resisting while Carmona-Perez was on the ground. *Id.* at 00:18, 00:45–00:47; Baskett Decl., ECF 64 ¶ 13; Chase Decl., ECF 65 ¶ 12; Ammon Decl., ECF 66 ¶ 12.

While Carmona-Perez was face down on the ground, Officer Chase struck him several times on the back of the head. Chase Decl., ECF 65 ¶ 16 ("I delivered several palm strikes to the back of [Carmona-Perez]'s head."); Baskett Decl., ECF 64 ¶ 14. Carmona-Perez states that he "believe[s] [he] passed out for a while." Carmona-Perez Decl., ECF 72 ¶ 7. The officers state that Carmona-Perez's "body relaxed" after Officer Chase delivered the palm strikes. Baskett Decl., ECF 64 ¶ 14; Chase Decl., ECF 65¶ 16; *see* Ammon Decl., ECF 66 ¶ 13; Rinta Decl., Ex. 3, ECF 73-3 at 82:9–10; Rinta Decl., Ex. 7, ECF 73-7 at 2. Officer Ammon then handcuffed Carmona-Perez, and the officers allege that he continued to resist. Baskett Decl., ECF 64 ¶ 14; Chase Decl., ECF 65 ¶ 16; Ammon Decl., ECF 66 ¶ 13.

The parties dispute whether any commands were given in Spanish. Officer Chase claims that, after Carmona-Perez was handcuffed, Carmona-Perez "sa[id] something in Spanish" and so Officer Chase "gave the commands in Spanish." Chase Decl., ECF 65 ¶ 17. Carmona-Perez claims that he "do[esn't] recall any of the officers saying anything in Spanish, or giving [him] any warnings, directions, or commands in Spanish, while [he] was on the ground." Carmona-Perez Decl., ECF 72 ¶ 8.

Carmona-Perez attests that "[he] experienced extreme pain in [his] head, neck, back, and wrists. [He] experienced the pain for a long time which made it hard for [him] to sleep continuing to present. [He] used to be able to sleep facing up, but now cannot sleep face-up due the continued pain in [his] back. It also negatively impacted [his] eyesight and memory." *Id.*

¶ 12. He filed a complaint with the Salem Police Department in July 2018. *Id.* ¶ 13. Investigator Stephen Smith concluded that "no evidence of misconduct by any of the officers involved" was found. Rinta Decl., Ex. 8, ECF 74 at 7. Investigator Smith's report also states that "the Use of Force Review Board has reviewed the incident and the lead Defensive Tactic Instructor has found the force used was justified and in accordance with department training." *Id.*

Plaintiff Carmona-Perez filed suit against Defendants in federal court on February 3, 2020. Compl., ECF 2; FAC, ECF 46. Plaintiff brings Fourth Amendment and *Monell* claims pursuant to 42 U.S.C. § 1983. FAC, ECF 46 ¶¶ 26–30. Plaintiff also brings supplemental state-law claims for negligence and battery against the City. *Id.* ¶¶ 17–25. Defendants move for summary judgment on all of Plaintiff's claims. MSJ, ECF 63.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). The court is not required to accept a non-movant's version of events when it is "clearly contradict[ed]" by a video in the record. *Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

## DISCUSSION

The Court first addresses Defendants' evidentiary objections to materials introduced by Plaintiff in his response to the motion for summary judgment. Next, the Court addresses the Fourth Amendment claim, beginning with the liability of the individual officers, moving to the

supervisory liability of Defendant Baskett, and then moving to the municipal liability of the City. Last, the Court addresses the state-law claims of negligence and battery.

## A.  Evidentiary Disputes

Pursuant to Federal Rule of Civil Procedure 56(c)(2),[1] Defendants object to materials offered by Plaintiff in his response to the motion for summary judgment. Defs.' Am. Reply to Pl.'s Resp. to MSJ ("Am. Reply"), ECF 82 at 1. Defendants contend that Plaintiff offered "[m]aterials that are inadmissible and will remain inadmissible at trial," which "cannot be considered in opposition to a motion for summary judgment." *Id.* Those materials include (1) the statement of a witness to the encounter, which Defendants argue is inadmissible hearsay; (2) an internal report on use of force from the Salem Police Department, which Defendants argue is irrelevant; (3) complaints made against Officer Ammon and Sergeant Baskett, which Defendants argue are irrelevant and inadmissible character evidence; and (4) text messages between Officers Ammon and Chase, which Defendants argue are irrelevant. Am. Reply, ECF 82 at 1–4. The Court addresses these objections in turn.

### 1.  Witness Statement

Defendants argue that the Court should exclude as inadmissible hearsay a statement made by a witness to the encounter between the officers and Plaintiff. That witness allegedly "made a comment" to Sergeant Baskett regarding Carmona-Perez "not speaking English." Rinta Decl., Ex. 6, ECF 73-6 at 2. It does not appear that Plaintiff deposed this individual.

Plaintiff responds that "to survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial." Pl.'s Sur-Reply ("Sur-Reply"),

---

[1] Defendants refer to it as Rule 56(a)(2) in their reply, ECF 82 at 1, but that rule does not exist. The Court construes these as objections lodged under Rule 56(c)(2).

ECF 91 at 2 (quoting *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003)). However, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment. Plaintiff suggests that the statement "could come into trial through several means, including through the speaker themselves if identified and compelled to present testimony at trial." Sur-Reply, ECF 91 at 2. Plaintiff fails to identify the witness or explain how that witness would come to be present at trial, or how the statement would be introduced. This is insufficient to show that the hearsay statement would be admissible.

Ultimately, the Court does not rely on this piece of evidence in the analysis below, and so declines to decide its admissibility for purposes of this summary judgment motion.

### 2. Use of Force Data

Defendants further argue that the Salem Police Department's internal report from 2020 on all instances of use of force is irrelevant and should be excluded under Federal Rule of Evidence 403. Am. Reply, ECF 82 at 3. Plaintiff responds that the data "goes to Plaintiff's burden for *Monell* claims to demonstrate deliberate indifference to, ratification of, and encouragement for a pattern and practice of illegal conduct." Sur-Reply, ECF 91 at 4.

"Because the court 'can award summary judgment only when there is no genuine dispute of *material* fact,' it cannot rely on irrelevant, vague, ambiguous, or otherwise insufficiently-probative evidence." *W. All. Bank v. Jefferson*, No. 2:14-CV-00761 JWS, 2015 WL 7075171, at *6 (D. Ariz. Nov. 13, 2015) (quoting *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006)), *aff'd*, 698 F. App'x 914 (9th Cir. 2017). This Court does not find a report of all use of force incidents to be relevant for purposes of this motion and does not consider it.

### 3.  Complaints against Officer Ammon and Sergeant Baskett

Next, Defendants argue that complaints made against Officer Ammon and Sergeant Baskett for alleged uses of excessive force following the incident with Plaintiff should be excluded as irrelevant and improper character evidence under Federal Rule of Evidence 404. Am. Reply, ECF 82 at 3. Plaintiff responds that subsequent excessive force complaints "demonstrate[] that the Defendant City condones of and continues to harbor a pattern and practice of excessive force against the people of Salem." Sur-Reply, ECF 91 at 4–5. Plaintiff offers the complaint as part of pattern of the City "not giv[ing] [Officer] Ammon counseling, corrective action, or discipline" with regard to excessive force allegations, which is arguably relevant to the *Monell* claim. Resp., ECF 71 at 7. This Court does not consider subsequent use of force complaints in analyzing this motion with respect to the claims that are brought individually against the officers as Plaintiff has failed to show how such unsubstantiated complaints are admissible.

The Court does not address the admissibility of this evidence should it be introduced at trial.

### 4.  Text Messages Between Officers Ammon and Chase

Last, Defendants argue that text messages between Officers Ammon and Chase should be excluded as irrelevant. Am. Reply, ECF 82 at 3–4. Plaintiff argues that "the text messages are relevant to witness credibility and the culture of impunity fostered by the City's pattern and practice of civil rights violations." Sur-Reply, ECF 91 at 5. In these messages, the officers discuss Officer Chase's deposition and Officer Ammon's preparation for his own deposition. Rinta Decl., Ex. 10, ECF 73-9 at 1. As with the other materials discussed above, the Court will consider this evidence only for purposes of the *Monell* claim as witness credibility

determinations at this stage of the proceeding are not appropriate. The Court declines to address the admissibility of this evidence should it be introduced at trial.

## B. Federal Claims Under 42 U.S.C. § 1983

Defendants argue that they are entitled to summary judgment on all of Plaintiff's federal claims. This Court first addresses the liability of the individual officers and whether they used excessive force in violation of the Fourth Amendment, and then whether they are entitled to qualified immunity as a matter of law at this stage of the proceeding. It next addresses Plaintiff's theory of supervisory liability as to Defendant Baskett. Last, it addresses the liability of the City.

### 1. Individual Officer Liability

To determine whether the officers are entitled to summary judgment, this Court begins by assessing the constitutionality of the two alleged uses of force: the take-down and the palm strikes. For the reasons that follow, this Court concludes that the take-down was reasonable as a matter of law. However, disputes of fact preclude this Court from deciding the constitutionality of the palm strikes. This Court then addresses qualified immunity, concluding that the officers are entitled to qualified immunity as to the take-down but that there are issues of fact in dispute regarding whether Defendants Chase and Baskett are entitled to qualified immunity as to the palm strikes.

#### a. Constitutional Violation

Plaintiff contends genuine disputes of material fact preclude summary judgment on his claim that Defendants used unconstitutionally excessive force in taking him to the ground and in striking him in the back of the head. Resp., ECF 71 at 10–16. Before discussing the reasonableness of those two uses of force, the Court notes that the officers were otherwise entitled to conduct themselves as they did at the beginning of the encounter. The officers were permitted to approach Plaintiff from behind, surprise him, and secure his arms by grabbing them.

PAGE 11 – OPINION AND ORDER

As explained in more detail below, the right to arrest carries with it the right to use some degree of physical coercion, and the Court concludes that this minimal degree of physical coercion comports with the Fourth Amendment.

To determine whether the take-down and palm strikes used by the officers were excessive uses of force under the Fourth Amendment, the Court must determine whether the officers' actions were objectively reasonable under the totality of the circumstances. *Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 642 (9th Cir. 2018). For this analysis, courts employ the framework outlined by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989). There, the Court instructed that "[d]etermining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted); *see Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005) (en banc).

In applying *Graham*, courts first consider the nature and quality of the alleged intrusion. "The gravity of the particular intrusion that a given use of force imposes upon an individual's liberty interest is measured with reference to 'the type and amount of force inflicted.'" *Young v. County of Los Angeles*, 655 F.3d 1156, 1161 (9th Cir. 2011) (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001)). Courts "consider the 'specific factual circumstances' of the case in classifying the force used." *Andrews v. City of Henderson*, 35 F.4th 710, 715–16 (9th Cir. 2022) (quoting *Williamson v. City of National City*, 23 F.4th 1146, 1151–52 (9th Cir. 2022)). "Relevant to [the] analysis are the 'nature and degree of physical contact' and 'the risk of harm and the actual harm experienced.'" *Id.* at 716.

Next, courts consider the governmental interests at stake by looking at (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others, which is the most important factor; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *See Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc). These factors are non-exhaustive and should be examined under the totality of the circumstances. *Rice v. Morehouse*, 989 F.3d 1112, 1121–22 (9th Cir. 2021); *see also Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994) (explaining that courts must "look to whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*").

Courts then balance the gravity of the intrusion on the individual and the government's need for that intrusion. *Williamson*, 23 F.4th at 1151. Because the balancing required by *Graham* "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," the Ninth Circuit has "held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (first quoting *Graham*, 490 U.S. at 396; then citing *Deorle*, 272 F.3d at 1279–81; and then citing *Liston v. County of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997)); *see also Est. of Aguirre v. County of Riverside*, 29 F.4th 624, 628 (9th Cir. 2022). That being said, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396.

### i.   Take-Down of Plaintiff

In light of all the circumstances and viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could not conclude that the take-down was unreasonable under the circumstances.

This Court finds that the take-down was an intermediate use of force. Sergeant Baskett admitted to pushing Plaintiff forward to effect the arrest, and when he realized that Plaintiff could hit the electronic gambling machine and shatter the screen, risking harm to Plaintiff and the officers, the officers pulled Plaintiff to the ground to avoid that potential harm. Plaintiff alleges that, once on the ground, the officers pressed on him with their knees and shins. However, while Plaintiff alleges that he suffered extreme pain in his neck, head, and back, and that he continues to experience pain in his neck and back, Plaintiff did not suffer severe injuries such as a fractured hip or broken vertebra, which distinguishes this take-down from those the Ninth Circuit has regarded as a "substantial," "aggressive," or "severe" use of force. *See Andrews*, 35 F.4th at 716 (holding that detectives' use of force was "substantial" where they "forcibly tackled Andrews to the ground with enough force to fracture his hip," "result[ing] in 'excruciating pain' and requir[ing] two surgeries"); *Rice*, 989 F.3d at 1121 (classifying as a "'substantial' and 'aggressive use' of force" a take-down that resulted in "'extreme pain' immediately following [Rice's] arrest and long-term physical pain for which he received medical treatment"); *Santos*, 287 F.3d at 853–54 ("[T]he nature of the intrusion was quite severe: as a result of being taken to the ground, [the plaintiff] suffered a broken vertebra which caused him both pain and immobility.").

Here, viewing all inferences in Plaintiff's favor, the take-down constituted a "form[] of force capable of inflicting significant pain and causing serious injury," and, as such, is "regarded as 'intermediate force' that, while less severe than deadly force, nonetheless present[s] a significant intrusion upon an individual's liberty interests." *Young*, 655 F.3d at 1161. Use of an "intermediate, significant level of force . . . must be justified by the governmental interest involved." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010)). As noted above, in

determining the government interest in the use of force, this Court looks at (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *See Mattos*, 661 F.3d at 441.

First, the crimes at issue were severe. Both the 2016 arrest warrant and the 2018 indictment involved violent felonies, and the government had a strong interest in Plaintiff's arrest. Second, while Plaintiff's behavior at the bar may not have made him an immediate threat to the safety of the officers and others, the officers did have reason to approach Plaintiff with caution. The Defendants had performed an LEDS review on Plaintiff, which informed them that he had cautions for past assault and resisting arrest. The officers thus approached the arrest with that knowledge. The officers also did not have an opportunity to determine whether Plaintiff was carrying a weapon before Sergeant Baskett gave the command to take him to the ground. "[A] simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle*, 272 F.3d at 1281. Based on the officers' background knowledge about Plaintiff, they were justified in approaching the encounter with due caution. Third, there is a fact dispute as to whether Plaintiff resisted arrest. On summary judgment, this Court must draw reasonable inferences in Plaintiff's favor, and a rational jury could credit Plaintiff's account that he did not understand he was under arrest and did not fight the officers.

In light of all the circumstances and viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could not conclude that the take-down was unreasonable under the circumstances. Though the take-down was an intermediate use of force, that degree of force was reasonable under the totality of the circumstances. Plaintiff was under arrest for severe crimes,

and the LEDS review cautioned the officers that Plaintiff had a history of assault and resisting arrest. Only around ten seconds elapsed from the officers first approaching Plaintiff to initiating the take-down, and during that time the officers had not searched Plaintiff for weapons.

The differences between Plaintiff's case and a recent Ninth Circuit case, *Rice v. Morehouse*, 989 F.3d 1112 (2021), are instructive. There, the court held that a jury could conclude a take-down was an unreasonable use of force. *Id.* at 1125. As the court explained, the crime at issue was not severe, and the two officers who performed the take-down had been told only that Rice was not complying with instructions. *Id.* at 1123. Those two officers were among seventeen who responded to the call and six who surrounded Rice. *Id.* at 1122. The situation had been developing for several minutes by the time the two officers arrived, and they had at least one minute to observe Rice "calmly" requesting to speak with a supervisor. *Id.* Whereas a jury could reasonably conclude that the take-down of Rice was an unnecessary use of force, the same cannot be said here.

Under the circumstances Defendants faced, even viewed in the light most favorable to Plaintiff, the officers were entitled to use this "degree of physical coercion" to accomplish the arrest. *See Graham*, 490 U.S. at 396.

### ii.  Palm Strikes to Plaintiff's Head

This Court concludes that, drawing all inferences and resolving all disputes in Plaintiff's favor, a reasonable jury could conclude that Officer Chase's palm strikes were not reasonable under the circumstances.

This Court finds that the palm strikes were "capable of inflicting significant pain and causing serious injury," constituting intermediate force. *See Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (quoting *Young*, 655 F.3d at 1161–62); *cf. Williamson*, 23 F.4th at 1152 ("Even viewing the evidence in Williamson's favor, the type and amount of force used by the Officers in

PAGE 16 – OPINION AND ORDER

this case was minimal. The Officers did not strike Williamson, throw her to the ground, or use any compliance techniques or weapons for the purpose of inflicting pain on her."). Officer Chase struck Plaintiff repeatedly in the back of the head, which Plaintiff alleges caused him to lose consciousness. The photographs of Plaintiff taken the day of the arrest show several raised, red welts on his forehead and a scrape along the right side of his face. Carmona-Perez Decl., Ex.1, ECF 72-1 at 1–4. Plaintiff attests that "[he] experienced extreme pain in [his] head, neck, back, and wrists," and that he continues to struggle to sleep. Carmona-Perez Decl., ECF 72 ¶ 12. He claims that his "eyesight and memory" were also "negatively impacted." *Id.* The repeated strikes to the back of Plaintiff's head while he was face down on the ground were an intermediate level of force.

Use of an "intermediate, significant level of force . . . must be justified by the governmental interest involved." *Bryan*, 630 F.3d at 826. Again, in determining the government interest in the use of force, this Court looks at (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *See Mattos*, 661 F.3d at 441.

First, the crimes at issue were severe. But the government's strong interest in securing Plaintiff's arrest does not necessarily mean it had a strong interest in this use of force during this stage of the encounter. Second, although Defendants had reason to be wary of Plaintiff given the cautions on his record, there are material issues of fact in dispute about whether Plaintiff was resisting arrest or struggling to keep his arms underneath his body to reach toward his waistband. Further, the witness video does not clearly contradict Plaintiff's version of events—Plaintiff's feet can be seen moving around, but his arms and hands are not visible. *See Rice*, 989 F.3d at

1123 ("Because the dash-cam video does not clearly contradict Rice's account, we must accept it."). Additionally, it is undisputed that the officers did not provide use-of-force warnings before striking him in the back of the head. *See Deorle*, 272 F.3d at 1284 ("[W]arnings should be given, when feasible, if the use of force may result in serious injury, and . . . the giving of a warning or the failure to do so is a factor to be considered in applying the *Graham* balancing test."). Because there are material facts in dispute, which depend on credibility findings, this Court cannot determine as a matter of law whether the palm strikes were excessive in violation of the Fourth Amendment. Thus, this Court turns to the clearly-established prong of the qualified-immunity analysis.

### b. Clearly Established Law

Even if this Court finds that genuine disputes of material fact exist regarding the reasonableness of the officers' use of force, such a finding does not preclude granting qualified immunity. *See Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 945 (9th Cir. 2017). Rather, "the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case." *Tuuamalemalo v. Greene*, 946 F.3d 471, 476–77 (9th Cir. 2019) (internal quotation marks omitted) (quoting *Scott*, 550 U.S. at 377).

Use of excessive force is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (internal quotation marks omitted and emphasis deleted). Cases involving similar facts can help move a case beyond the otherwise "hazy border between excessive and acceptable force" and provide notice to a police officer that a specific use of force is unlawful. *Id.* at 18 (internal quotation marks omitted). Plaintiffs bear the burden of identifying controlling precedent. *See Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017). This burden is especially heavy in

excessive force cases where it is difficult for an officer to determine how the relevant legal doctrine will apply to the factual circumstances he confronts, and consequently, clearly established law must be defined with particular specificity. *Mullenix*, 577 U.S. at 12.

In determining the specific context of the case, this Court continues to view the evidence and draw reasonable inferences in the light most favorable to the non-movant. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) ("Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant, even when, as here, a court decides only the clearly-established prong of the standard.").[2]

Plaintiff argues that in the Ninth Circuit "there is a 'clearly established . . . right to be free from any kind of non-trivial force where the plaintiff did not resist or only passively resisted the officer'" and "that 'non-trivial force [is] not justified in the face of passive or even minimal resistance.'" Resp., ECF 71 at 29 (quoting *Rice*, 989 F.3d at 1126).[3] Relatedly, Plaintiff argues that it is clearly established that "a failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force." *Id.* (quoting *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012)). Plaintiff does not explain how those quoted cases, both of which involve different scenarios than the one

---

[2] Defendants define the context as follows: "No case clearly establishes that trying to avoid glass shattering and injuring officers or the suspect by taking a suspect to the floor to gain control is unconstitutional. Further, no case clearly establishes that palm strikes to a suspect's head when the suspect is kicking his legs, actively resisting arrest and refusing to show his hands is unconstitutional." MSJ, ECF 63 at 12. But this description draws inferences and resolves disputes of fact in favor of Defendants, which is not permitted on summary judgment.

[3] Although *Rice*'s issuance post-dates the events at issue here, and thus could not have put the officers on notice that their conduct was violative, it held that "[l]ong before [December 26, 2011], we clearly established one's 'right to be free from the application of non-trivial force for engaging in mere passive resistance.'" *Rice*, 989 F.3d at 1125 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013)).

presented here, put these officers on notice that their specific actions in these circumstances were unlawful. *See Hopson v. Alexander*, 71 F.4th 692, 702 (9th Cir. 2023) ("[T]he cases Hopson cites are materially different from this one. Hopson thus identifies no clearly established law that would cause 'every reasonable official' to understand that any of these actions violate the Fourth Amendment in the circumstances of this case.").

Plaintiff does, however, offer a third case that is apposite. Plaintiff argues that "the Court need not look any further than the Ninth Circuit case *Blankenhorn v. City of Orange*, 485 F.3d 463, 480–[8]1 (9th Cir. 2007)." Resp., ECF 71 at 29. There, he contends, "three officers tackled [the plaintiff], and one officer punched him several times while he was on the ground during the course of an arrest" and "[t]he Ninth Circuit held a jury could determine the uses of force were unreasonable, and that plaintiff's federal rights and the state of the law was clearly established." *Id.* As explained above, this Court concludes that the take-down was reasonable under the Fourth Amendment as a matter of law. Nonetheless, this Court assumes for the sake of the qualified-immunity analysis that a rational jury could find that both the take-down and the palm strikes were unconstitutional. With that assumption in mind, this Court turns to whether *Blankenhorn* clearly established the law for these circumstances.

### i.  Take-Down of Plaintiff

As to the take-down of Plaintiff, *Blankenhorn* is distinguishable in several respects. There, the Ninth Circuit noted that the "severity of the alleged crime, misdemeanor trespass, was minimal." 485 F.3d at 478. Here, the offenses listed in the 2016 warrant and the 2018 indictment included violent felonies.

Blankenhorn had behaved cooperatively with the arresting officers just three weeks before the arrest. 485 F.3d at 478. Here, the officers entered the encounter with different background information—the LEDS review had a "caution" indicator, which the officers

understood to mean Plaintiff should be treated as dangerous and they should proceed with caution. Baskett Decl., ECF 64 ¶ 5; Chase Decl., ECF 65 ¶ 4; Ammon Decl., ECF 66 ¶ 4; *see also* Gaddis Decl., Ex. C, ECF 83-1 at 29:7–14. That distinction means *Blankenhorn* does not present clearly established law for Plaintiff's take-down claim, even if, taking Plaintiff's version of events as true, he did not fight with the officers, and the surveillance video reflects that he was not acting in a threatening manner when the officers arrived.

Further, as the *Blankenhorn* Court pointed out, "the pace of events" there "could reasonably lead to the conclusion that the latitude *Graham* requires for split-second judgments in 'tense, uncertain, or rapidly evolving' situations was not warranted.'" 485 F.3d at 478 (quoting *Graham*, 490 U.S. at 397). The officer there had engaged Blankenhorn in a back-and-forth exchange. Here, the pace of events was on the order of seconds—as the surveillance video shows, about ten seconds elapsed from the beginning of the encounter to the officers taking Plaintiff to the ground. *See* ECF 73-2 at 00:00–00:11.

Ultimately, *Blankenhorn* does not address with sufficient specificity the officers' conduct or the circumstances they confronted. Even assuming that the take-down was an unreasonable use of force, Defendant Officers are entitled to qualified immunity because, at the time of the encounter, the case law did not place the officers on notice that the take-down was an unreasonable use of force under the Fourth Amendment.

### ii. Palm Strikes to Plaintiff's Head

As to the palm strikes, however, *Blankenhorn* squarely governs. There, the Ninth Circuit determined that a reasonable officer would be "on notice that punching Blankenhorn to free his arms when, in fact, he was not manipulating his arms in an attempt to avoid being handcuffed, was . . . a Fourth Amendment violation." *Blankenhorn*, 485 F.3d at 481. The officer stated that he "punched Blankenhorn several times during the arrest because he 'was trying to get Mr.

PAGE 21 – OPINION AND ORDER

Blankenhorn's arms out from underneath him and secure the handcuffs.'" *Id.* at 480.
Blankenhorn, on the other hand, "claim[ed] he never pinned his arms underneath his body" and
"[t]he video d[id] not clearly show whether he did so or not." *Id.* The court, "[c]rediting
Blankenhorn's version of the events, as [it] must at a summary-judgment stage," "conclude[d]
that a rational jury could find that if Blankenhorn did not maneuver his arms beneath his body it
eliminated the need for any use of force to release them, and thus that [the officer's] punches
were not reasonably justified by the circumstances as he claims." *Id.*

        Likewise here. Crediting Plaintiff's version of events, he was face down on the ground
with three officers holding him down, he claims he was not fighting the officers or reaching for
his waistband, and Officer Chase struck him in the back of the head several times. There are
material issues of fact about how and why the palm striking occurred. Accordingly, at this stage,
this Court cannot find as a matter of law that Defendant Chase is entitled to qualified immunity
as to his palm strikes to the back of Plaintiff's head. Likewise, as explained below, under
Plaintiff's supervisory liability theory, Defendant Baskett is not entitled to qualified immunity as
a matter of law at this stage of the proceeding. Plaintiff has not presented any facts to show
Defendant Ammon's personal involvement in the palm strikes and accordingly, he is entitled to
qualified immunity.

        **2. Supervisory Liability**

        Before turning to the City's potential liability, there is the issue of Plaintiff's supervisory
liability theory involving Defendant Baskett. Plaintiff argues that Defendant Baskett is liable "in
his individual capacity" for "his participation in the unlawful conduct, and his failure to train,
supervise, and control his subordinates." Resp., ECF 71 at 27 (capitalization omitted). On reply,
Defendants appear to construe this as an argument regarding the City's liability. Am. Reply, ECF
82 at 11, 9 (presenting its arguments on this issue in a Section entitled "§ 1983 Claim – *Monell*

Liability"). Indeed, Defendants cite *Lytle v. Carl*, 382 F.3d 978 (9th Cir. 2004), which involved a municipality being "held liable for a constitutional violation" because "a final policymaker ratifie[d] a subordinate's actions." *Id.* at 987.

Assuming, as Plaintiff argued, that Plaintiff is pursuing Defendant Baskett in his individual capacity based on supervisory liability, then that claim survives summary judgment for the same reasons discussed above as to Officer Chase's individual liability. "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir.1998)). "Officers may not be held liable merely for being present at the scene of a constitutional violation . . . ." *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018).

As discussed above, construing the facts and resolving disputes in favor of Plaintiff, a reasonable jury could conclude that the palm strikes were an unreasonable use of force under these circumstances. For those same reasons, a rational jury could conclude that Sergeant Baskett's participation in the encounter and acquiescence in the constitutional violation makes him liable as Officer Chase's supervisor. Further, as discussed above, *Blankenhorn* clearly established that "a reasonable officer [would be] on notice that punching [an arrestee] to free his arms when, in fact, he was not manipulating his arms in an attempt to avoid being handcuffed, was . . . a Fourth Amendment violation." *Id.* at 481. That applies with equal force to Sergeant Baskett, who participated in the encounter and acted as the supervising officer. This Court denies summary judgment as to Defendant Baskett on this claim.

### 3.  Municipal Liability

A municipality "may be held liable under section 1983 if its deliberate policy caused the violation alleged." *Blankenhorn*, 485 F.3d at 483 (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)).

The Ninth Circuit has recognized three possible theories for *Monell* liability. *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018). First, a local government may be liable if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." *Monell*, 436 U.S. at 694. Second, a local government can fail to train employees in a manner that amounts to "deliberate indifference" to a constitutional right, such that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Third, a local government may be held liable if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Gravelet-Blondin*, 728 F.3d at 1097 (internal quotation marks and citation omitted).

Plaintiff invokes two of those theories. He argues that the City is not entitled to summary judgment on the *Monell* claim because it (1) failed to train, investigate, and discipline the officers and (2) ratified the officers' use of force. Resp., ECF 71 at 30–33.

#### a.  Failure to Train, Investigate, and Discipline

"[A] § 1983 plaintiff may prove the second type of *Monell* liability, deliberate indifference, through evidence of a 'failure to investigate and discipline employees in the face of widespread constitutional violations.'" *Rodriguez*, 891 F.3d at 803 (quoting *Hunter v. County of*

*Sacramento*, 652 F.3d 1225, 1234 n.8 (9th Cir. 2011)); *see also Horton ex rel. Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019) (explaining that *Monell* liability can arise from a failure to train, supervise, or discipline that amounts to a deliberate indifference to individuals' constitutional rights); *Sheehan v. City & County of San Francisco*, 743 F.3d 1211, 1230 (9th Cir. 2014) ("The 'inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" (quoting *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008))), *rev'd in part on other grounds*, 575 U.S. 600 (2015).

To show deliberate indifference, Plaintiff must demonstrate that the need "'for more or different' action 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Hyun Ju Park v. City & County of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020) (brackets in original) (quoting *Harris*, 489 U.S. at 390 n.10).

Plaintiff offers several pieces of evidence in an effort to establish the inadequacy of the City's training, investigation, and discipline.

First, he points to complaints brought against Defendants Baskett and Ammon for "excessive force during arrest just one year prior to this incident." Resp., ECF 71 at 31. Plaintiff appears to be referring to a civil lawsuit filed in 2017, and he alleges that the "City failed to even interview the officers about, much less provide any discipline or training." *Id.* On reply, Defendants provide evidence[4] that Defendant Ammon was not a party to that lawsuit, and that the constitutional claims against Defendant Baskett were dismissed in 2021. Gaddis Decl., Ex. F, ECF 83-4. There, the court determined that Defendant Baskett's use of force was objectively

---

[4] Plaintiff does not object to the introduction of this evidence.

reasonable, and even if Sergeant Baskett had violated a constitutional right, such a right was not clearly established at the time of the encounter. *Williams v. Baskett*, No. 6:19-CV-00069-MO, 2021 WL 4494189, at *5–6 (D. Or. Sept. 30, 2021), *aff'd*, No. 22-35054, 2023 WL 4618535 (9th Cir. July 19, 2023). The Ninth Circuit recently affirmed on the ground that the right was not clearly established. *Williams*, 2023 WL 4618535 at *1. On remand to state court, the claims were dismissed without prejudice. Gaddis Decl., Ex. F, ECF 83-4 at 1. Defendants state that the plaintiff appealed the dismissal. Am. Reply, ECF 82 at 10 n.3. To the extent Plaintiff relies on a complaint made against Officer Ammon *after* the incident at issue here, Defendants argue that that "complaint was unsubstantiated." Am. Reply, ECF 82 at 3.

Second, Plaintiff points to the City's conduct following Plaintiff's filing a citizen complaint, specifically that the City failed to interview and discipline the officers. Resp., ECF 71 at 6. The formal investigation report provided by Plaintiff, Rinta Decl., Ex. 8, ECF 74, reflects that Investigator Smith reviewed the officers' reports of the incident and the video footage, interviewed Plaintiff, and forwarded the incident to the Salem Police Department's Use of Force Review Board. *Id.* at 3–6. According to the report, the Use of Force Review Board also reviewed the incident and determined that "the force used was justified and in accordance with department training." *Id.* at 7. The report was forwarded to Deputy Chief Skip Miller for review. *Id.* Even if the failure to interview the officers amounted to a failure to investigate, Plaintiff has not provided evidence to show that this failure is recurring. Likewise, a single failure does not establish a custom or practice. *See Horton*, 915 F.3d at 602–03 (explaining that to be liable under § 1983, a municipality must have a "pervasive practice or custom").

Taken together, this evidence offered by Plaintiff does not establish the inadequacy of the City's training, investigation, and discipline. Plaintiff has not produced evidence to create a

genuine dispute of fact concerning whether municipal Defendants' failure to train, investigate, or discipline amounted to deliberate indifference of individuals' constitutional rights.

### b. Ratification

Plaintiff next argues that "[a]n internal police review concluding an officer's use of force was lawful and within policy can be sufficient to support a theory of ratification for the purposes of *Monell* liability and is a factual determination for the jury." Resp., ECF 71 at 30 (citing *Thomas v. Cannon*, No. 3:15-05346 BJR, 2017 WL 2289081, at *13 (W.D. Wash. May 25, 2017)). Plaintiff goes on to assert that "[a] single subsequent ratification of the conduct that gave rise to a plaintiff's lawsuit can support *Monell* liability." *Id.* (citing *Haugen v. Brousseau*, 351 F.3d 372, 393 (9th Cir. 2003), *rev'd on other grounds*, 543 U.S. 194 (2004)).

As Defendants point out on reply, ECF 82 at 12, *Haugen* requires more than a subsequent ratification—a plaintiff must also show that the subsequent ratification "was the product of a 'conscious, affirmative choice' to ratify the conduct in question." 351 F.3d at 393 (citing *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992)). Further, as the Ninth Circuit recently explained, "'[r]atification . . . generally requires more than acquiescence,' and 'a mere failure to discipline . . . does not amount to ratification' of allegedly unconstitutional actions." *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 788 (9th Cir. 2022) (ellipses in original) (quoting *Sheehan*, 743 F.3d at 1231). Plaintiff has not provided evidence of anything more than acquiescence in the officers' allegedly unconstitutional conduct.

Plaintiff has not introduced evidence to create a genuine dispute of fact concerning whether (1) municipal Defendants' failure to train, investigate, or discipline amounted to deliberate indifference of individuals' constitutional right and (2) Defendants ratified the allegedly unconstitutional actions of the officers. The City is entitled to summary judgment on this claim.

PAGE 27 – OPINION AND ORDER

### C. State-Law Claims

Defendants argue that they are entitled to summary judgment on Plaintiff's state-law claims for negligence and battery. MSJ, ECF 63 at 15–17.

#### 1. Negligence

In their opening brief for this motion, Defendants argue that "Plaintiff cannot shoe-horn the officers' allegedly intentional conduct into the lesser standard of negligence." *Id.* at 16 (citing *Kasnick v. Cooke*, 116 Or. App. 580, 582–83 (1992)). In their reply, Defendants reframe this argument, contending that Plaintiff's state-law negligence claim must be dismissed because it is based on the same facts as his § 1983 claims. Am. Reply, ECF 82 at 13. Defendants point this Court to a string of cases from the District of Oregon holding as such. *Id.* (first citing *Whitfield v. Tri-Metro. Transp. Dist.*, Civil No. 06-1655-HA, 2009 WL 839484, at *11 (D. Or. Mar. 30, 2009); then citing *Rodrigues v. Jackson County*, No. 1:13-CV-01589-CL, 2015 WL 404577, at *4 (D. Or. Jan. 29, 2015); then citing *Woods v. Gutierrez*, No. 3:11-CV-01082-BR, 2012 WL 6203170, at *12 (D. Or. Dec. 12, 2012); then citing *Shilo v. City of Portland*, No. CV 04-130-AS, 2005 WL 3157563, at *2 (D. Or. Nov. 22, 2005); then citing *Aranda v. City of McMinnville*, 942 F. Supp. 2d 1096, 1110 (D. Or. 2013); and then citing *Saberi v. City of Portland*, No. CV 04-1396-MO, 2006 WL 2707995, at *4 (D. Or. Sept. 18, 2006)). *But see Johns v. City of Eugene*, No. 6:16-CV-00907-AA, 2018 WL 634519, at *14 (D. Or. Jan. 30, 2018) ("[N]othing in federal or state law requires pretrial dismissal of a negligence claim simply because it rests on the same factual allegations as a civil rights claim under § 1983."), *rev'd on other grounds*, 771 F. App'x 739 (9th Cir. 2019).

Generally, courts refrain from considering new arguments raised on reply, but "a district court has the discretion to consider an argument first raised in a reply brief." *Lane v. Dep't of Interior*, 523 F.3d 1128, 1140 (9th Cir. 2008) (citing *Glenn K. Jackson, Inc. v. Roe*, 273 F.3d

1192, 1201–02 (9th Cir. 2001)). To the extent Defendants raise a new argument on reply, this Court exercises that discretion here.

Here, the facts underlying Plaintiff's negligence claim are the same facts underlying his § 1983 claim. As to the negligence claim, Plaintiff alleged that the officers were negligent in "failing to properly announce their identities as law enforcement before putting their hands upon Plaintiff," "taking Plaintiff to the ground," "striking him in the head, neck and back," "failing to properly give instructions to Plaintiff and giving him an opportunity to comply," and "misapplying use of force standards." FAC, ECF 46 ¶ 19. These same facts form the basis of his Fourth Amendment claim. *See id.* at ¶¶ 27–29. This is not the kind of situation where a plaintiff "allege[s] a § 1983 violation for the use of a flash-bang device, and a separate negligence claim if that flash-device, left unattended, starts a fire." *See Shilo*, 2005 WL 3157563, at *2.

Because a state common-law claim of negligence may be maintained separately from a § 1983 claim only when the negligence claim is based on facts that are different from the facts on which the § 1983 claims are based, the City is entitled to summary judgment on Plaintiff's negligence claim.

### 2. Battery

Defendants argue that "[t]here are no facts to support" Plaintiff's battery claim. MSJ, ECF 63 at 17. As discussed with respect to the excessive force claim against the officers, there are genuine fact questions that a jury should decide and, depending on the resolution of those questions, there could be support for the battery claim.

Defendants further argue that "[p]olice officers performing their duty acting with apparent authority are also entitled to good faith immunity under ORS 30.265(6)(f)." *Id.* at 17. That defense is inapplicable here. As an Oregon state court explained, "ORS 30.265(6)(f) applies to public actors who, acting without bad faith or malice, rely on their plausible interpretation of

laws that turn out to be unconstitutional, invalid, or inapplicable." *Cruz v. Multnomah County*, 279 Or. App. 1, 13 (2016). Defendants do not claim to have relied on an interpretation of law that was later deemed incorrect. This defense is inapplicable.

Because factual questions remain regarding whether the use of palm strikes was excessive or otherwise reasonable under the circumstances, the City is not entitled to summary judgment on Plaintiff's state-law battery claim.

## CONCLUSION

Defendants' Motion for Summary Judgment, ECF 63, is GRANTED in part and DENIED in part. Defendant Ammon is hereby DISMISSED from this action.

**IT IS SO ORDERED.**

DATED this 25th day of September, 2023.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge